MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              egalvan@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| F.J.; R.E.; and D.B.; on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>         v.<br><br>RALPH DIAZ, Secretary of the California Department of Corrections and Rehabilitation, in his individual and official capacities; SCOTT KERNAN, in his individual capacity; and DOES 1 to 10, inclusive,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) PROCEDURAL DUE PROCESS VIOLATIONS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION;**<br><br>**(2) VIOLATION OF THE CALIFORNIA BANE ACT;**<br><br>**(3) SUBSTANTIVE DUE PROCESS VIOLATIONS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION;**<br><br>**(4) FALSE IMPRISONMENT;**<br><br>**(5) PROCEDURAL DUE PROCESS VIOLATIONS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION (INJUNCTIVE RELIEF);**<br><br>**(6) VIOLATION OF CALIFORNIA CONSTITUTION, ART. I SECTIONS 7 & 32 (INJUNCTIVE RELIEF).**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, individually and on behalf of all others similarly situated, upon personal knowledge as to themselves and belief as to other matters, allege as follows:

## INTRODUCTION

1. All California prisoners convicted and sentenced for nonviolent crimes—including those sentenced under California's "Three Strikes and You're Out" Law—were made eligible for early parole consideration in January 2017 by amendments to the state constitution enacted as part of Proposition 57, the Public Safety and Rehabilitation Act of 2016. *See* Cal. Const. art. I, § 32(a)(1).

2. Despite these amendments to the state constitution, officials of the California Department of Corrections and Rehabilitation (hereinafter "CDCR") categorically stripped nonviolent third strike offenders of this eligibility until January 2019. *See* Cal. Code Regs. tit. 15, §§ 2449.1(a)-(a)(1) (2017). Plaintiffs now seek a remedy for two years during which they and all other people sentenced to an indeterminate life term for a nonviolent third strike offense were deprived of their early parole eligibility in violation of the California and United States Constitutions.

3. Plaintiffs also seek to expedite the three-year schedule that CDCR officials subsequently set for their parole hearings. The current schedule allows CDCR to continue to incarcerate this group of nonviolent offenders for up to five years after the California Constitution made them eligible to be considered for parole.

4. In the November 2016 election, Californians voted to amend the state constitution with a slate of criminal justice reforms known as Proposition 57. Among other changes, Proposition 57 "sought to provide relief to nonviolent offenders" by making all prisoners convicted of a nonviolent felony offense eligible for early parole consideration. To effectuate this purpose, Proposition 57 created Article I, Section 32 of the California Constitution, which provides that "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." Cal. Const. art. I, § 32(a)(1) (hereinafter "Section 32"). These constitutional provisions define the "full term for the

[3467486.2]

primary offense" to mean the maximum term that the prisoner would have faced in the absence of enhancements or alternative sentences like those imposed under California's Three Strikes Law. *See id.* § 32(a)(1)(A).

5.      Defendants have delayed parole consideration for inmates sentenced under the Three Strikes law in several ways.  First, for three months after the effective date of Section 32, the current and former CDCR officials who are named as Defendants in this lawsuit did nothing to implement the early parole eligibility mandated by Proposition 57 for any nonviolent inmate.  Then, in April 2017, Defendants adopted emergency regulations implementing Section 32 but excluding all third strike offenders from its benefits, regardless of their crime of conviction. *See* Cal. Code Regs. tit. 15, §§ 2449.1(a)-(a)(1) (2017).  By this regulation, nonviolent third strike offenders whom Section 32 had made eligible for parole consideration were uniformly stripped of this entitlement. Defendants adopted final regulations in May 2018 that continued to exclude nonviolent third strike offenders from the parole eligibility provided by Section 32.

6.      In 2018, the California Court of Appeal for the Second District ruled that the early parole opportunities provided by Section 32 applied to those inmates serving life sentences under the Three Strikes law for nonviolent crimes. *See In re Edwards*, 26 Cal. App. 5th 1181, 1190-091 (2018) ("There is no question that the voters who approved Proposition 57 intended Edwards and others serving Three Strikes indeterminate sentences to be eligible for early parole consideration …."); *see also* Cal. Penal Code § 667.5(c) (West 2019) (enumerating "violent felon[ies]").  CDCR did not appeal this decision to the Supreme Court of California.  Instead, it amended its regulations to comply with *Edwards* and provide early parole to nonviolent three strikes prisoners starting in January 2019. *See* Cal. Code Regs. tit. 15, §§ 2449.1, 3490, 3491 (2019).

7.      Section 32 applies to all California prisoners serving life sentences for a nonviolent third strike offense, making the vast majority of the 3,100 such individuals who were incarcerated when the amendment went into effect on January 1, 2017 immediately eligible to be considered for parole and potentially released. *See Edwards*, 26 Cal. App.

[3467486.2]

5th at 1190.

8.    Categorically denying parole consideration to nonviolent third strike offenders for two years violated both the California Constitution and clearly established law under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  As the United States Supreme Court has explained, a state parole system "may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987).  The Ninth Circuit Court of Appeals has squarely held that California's parole system creates such an interest. *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010), *rev'd on other grounds sub nom. Swarthout v. Cooke*, 562 U.S. 216 (2011) (per curiam).  And when a state's parole system "creates a liberty interest, the Due Process Clause requires fair procedures for its vindication."  *Swarthout*, 562 U.S. at 220.

9.    Defendants' regulations, which categorically excluded inmates sentenced under the Three Strikes law from parole consideration under Section 32, stripped all nonviolent third strike offenders of access to the "fair procedures" that the Due Process Clause requires.  Plaintiffs, and all others similarly situated, now seek compensation for the harm caused by this violation of their constitutional rights and for the two years they waited to obtain the parole eligibility that California's voters had granted them by enacting Section 32.  Plaintiffs and similarly situated persons who remain incarcerated because Defendants refused for two years to start holding parole hearings for them also seek to avoid an additional three years of delay under the schedule that Defendants have set for clearing the resulting backlog of their hearings.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over the federal constitutional claims in this suit under 28 U.S.C. §§ 1331 and 1343 because these causes of action arise under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

11.    This Court has supplemental jurisdiction over the state law claims in this suit under 28 U.S.C. § 1367.  These claims arise from the same actions on the part of

[3467486.2]

1    Defendants as the federal law claims, share a "common nucleus of operative fact," and are

2    sufficiently related to the federal law claims to form part of the same case or controversy.

3    *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

4        12.    Venue is proper in the Northern District of California under 28 U.S.C.

5    § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in

6    this District.  Plaintiffs F.J. and D.B. were incarcerated in this District during the time that

7    Defendants' actions unconstitutionally denied them access to parole consideration.

8    Plaintiff F.J. still lives in this District, and Plaintiff D.B. is still incarcerated in this District.

9                                    **PARTIES**

10                                   **Plaintiffs[1]**

11       13.    Plaintiff F.J. is an adult individual who was recently released on parole from

12   a prison in the Northern District of California.

13       14.    Plaintiff F.J. resides in the Northern District of California.

14       15.    Until 2019, Plaintiff F.J. was incarcerated with an indeterminate life sentence

15   for a nonviolent offense under the Three Strikes Law.

16       16.    The "full term" of Plaintiff F.J.'s "primary offense," as defined in Article I,

17   Section 32 of the California Constitution, lapsed before Proposition 57 was passed.

18   Plaintiff F.J. therefore should have obtained immediate eligibility for parole consideration

19   in January 2017 when Proposition 57 went into effect.

20       17.    But because Plaintiff F.J. was sentenced to an indeterminate life term under

21   the Three Strikes Law for his nonviolent offense, he was categorically excluded from early

22   parole eligibility by Defendants' failure to implement Proposition 57 from January-April

23   2017 and by the April 2017 regulations.  *See* Cal. Code Regs. tit. 15, §§ 2449.1(a)-(a)(1)

24   (2017) (defining "[n]onviolent [o]ffender" as "an inmate who is not … incarcerated for a

25

26   ─────────────────

27   [1] In order to protect against retaliation for filing this suit, Plaintiffs are identified here by
     their initials.  Plaintiffs' counsel is prepared to identify Plaintiffs by name to Defendants'
28   counsel provided a protective order is in place to avoid public release of their identities and
     retaliation by CDCR officials or others.

[3467486.2]

1    term of life with the possibility of parole").

2        18.    When the April 2017 regulations were rescinded in January 2019, Plaintiff

3    F.J. became immediately eligible for parole and was soon released.

4        19.    Plaintiff R.E. is an adult individual who is currently incarcerated at a prison

5    in the Eastern District of California.

6        20.    Plaintiff R.E. is serving an indeterminate life sentence for a nonviolent

7    offense under the Three Strikes Law.

8        21.    The "full term" of Plaintiff R.E.'s "primary offense" lapsed before

9    Proposition 57 was passed.  Plaintiff R.E. therefore should have obtained immediate

10    eligibility for early parole consideration in January 2017 when Proposition 57 went into

11    effect.

12        22.    But because Plaintiff R.E. was sentenced to an indeterminate life term under

13    the Three Strikes Law for his nonviolent offense, he was categorically excluded from early

14    parole eligibility by Defendants' failure to implement Proposition 57 from January-April

15    2017 and by the April 2017 regulations.  *See* Cal. Code Regs. tit. 15, §§ 2449.1(a)-(a)(1)

16    (2017).

17        23.    Once Defendants' April 2017 regulations were rescinded, Plaintiff R.E.

18    became immediately eligible for parole consideration.

19        24.    While incarcerated, Plaintiff R.E. has established a nearly spotless

20    disciplinary record.  He has received no major disciplinary infractions and no infractions

21    that would disqualify him from being released on parole.

22        25.    Plaintiff R.E. has not yet received a parole hearing.

23        26.    Plaintiff D.B. is an adult individual who is currently incarcerated at a prison

24    in the Northern District of California.

25        27.    Plaintiff D.B. is serving an indeterminate life sentence for a nonviolent

26    offense under the Three Strikes Law.

27        28.    The "full term" of Plaintiff D.B.'s "primary offense" lapsed before

28    Proposition 57 was passed.  Plaintiff D.B. therefore should have obtained immediate

[3467486.2]

eligibility for early parole consideration in January 2017 when Proposition 57 went into effect.

29.    But because Plaintiff D.B. was sentenced to an indeterminate life term under the Three Strikes Law for his nonviolent offense, he was categorically excluded from early parole eligibility by Defendants' failure to implement Proposition 57 from January-April 2017 and by the April 2017 regulations.

30.    Once Defendants' April 2017 regulations were rescinded, Plaintiff D.B. became immediately eligible for parole consideration.

31.    While incarcerated, Plaintiff D.B. has established a nearly spotless disciplinary record.  He has received no major or disqualifying disciplinary infractions and has attained the lowest and best possible score for institutional behavior.

32.    Plaintiff D.B. has not yet received a parole hearing.

**Defendants**

33.    Defendants are current and former CDCR officials who were responsible for the failure to implement Proposition 57 from January to April 2017 and the adoption and implementation of the April 2017 regulations.

34.    Defendant RALPH DIAZ, Secretary of the Department of Corrections and Rehabilitation, is sued in his individual and official capacity.

35.    Defendant SCOTT KERNAN, former Secretary of the Department of Corrections and Rehabilitation, is sued in his individual capacity.

36.    Defendant JOHN DOES 1-10 are unknown CDCR officials who were responsible for the failure to implement Proposition 57 from January to April 2017 and/or the adoption, implementation, and enforcement of the April 2017 regulations.  Defendant DOES are sued in their individual and official capacities.

**CLASS ACTION ALLEGATIONS**

37.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

[3467486.2]

38.     Plaintiffs bring the First and Second Causes of Action articulated herein (denial of eligibility for parole consideration) on behalf of all people who were serving an indeterminate life sentence for a nonviolent offense under California's Three Strikes Law on January 1, 2017, and whose "full term of the primary offense"[2] is scheduled to elapse on or before December 31, 2021.  This class of Plaintiffs will be referred to as the "Eligibility Class."

39.     In addition, Plaintiff F.J. brings the Third and Fourth Causes of Action articulated herein (denial of release) on his own behalf and on behalf of all others similarly situated—namely, all members of the Eligibility Class who have been released since January 1, 2017 and whose release was not caused by events that occurred between January 1, 2017 and January 1, 2019.  This subclass of Plaintiffs will be referred to as the "Released Subclass."

40.     Finally, Plaintiffs R.E. and D.B. bring the Fifth and Sixth Causes of Action articulated herein (ongoing delay) on their own behalf and on behalf of all others similarly situated—namely, all members of the Eligibility Class who have not yet received parole consideration since the effective date of the January 2019 regulations.  This subclass of Plaintiffs will be referred to as the "Injunctive Subclass."

41.     The causes of action brought by the Eligibility Class as a whole and by the Released Subclass are brought pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The causes of action brought only by the Injunctive Subclass are brought pursuant to Rules 23(a) and (b)(2).

42.     The persons in the class and subclasses identified above are so numerous that joinder of all class members is impracticable.

43.     Upon information and belief, there are approximately 3,000 members of the

---

[2] This term has the meaning given it by *In re Edwards*, 26 Cal. App. 5th at 1192, and by Article I, Section 32(a)(1)(A) of the California Constitution.

[3467486.2]

Eligibility Class.[3] Although the precise number of members of the Released Subclass and the Injunctive Subclass are unknown, Plaintiffs are informed and believe that dozens of class members have been released on parole since the January 2019 regulations took effect, and that thousands have not yet received parole consideration. Joinder of all members of these classes is impracticable and unfeasible.

44. The claims of the named Plaintiffs are typical of the claims of the members of the proposed class and subclasses they represent. Plaintiffs and all other members of the class have sustained similar injuries arising out of and caused by Defendants' common course of conduct in violation of the California and U.S. Constitutions: depriving all class members of their parole eligibility for two years, and delaying their parole consideration by up to an additional three years.

45. Plaintiffs are members of the class and subclasses they represent and will fairly and adequately represent and protect the interests of the putative class members. They have no interests adverse to those of the other class members. Plaintiffs have retained competent and experienced counsel.

46. There are numerous questions of law and fact common to all class members that predominate over any questions only affecting them individually. These include, but are not limited to, the following:

(a) whether Defendants' April 2017 regulations categorically eliminated Plaintiffs' eligibility for parole consideration without providing any notice or opportunity to be heard;

(b) whether Defendants' April 2017 regulations violated Section 7 (Due Process) and Section 32 (Proposition 57) of the California Constitution;

(c) whether Defendants' April 2017 regulations violated the Due Process

---

[3] Based on CDCR records of the commitment offenses and offense dates of the 3,100 nonviolent third strike offenders who were incarcerated in early 2017, Plaintiffs believe that the "full term of the primary offense" for the overwhelming majority of those offenders was scheduled to elapse on or before December 31, 2021.

[3467486.2]

Clause of the Fourteenth Amendment to the U.S. Constitution;

(d)     whether Defendants' April 2017 regulations imposed an injury on Plaintiffs that is remediable by monetary damages;

(e)     whether Defendants knew that the April 2017 regulations violated the U.S. and California Constitutions;

(f)     whether Defendants should have known that the April 2017 regulations violated the U.S. and California Constitutions;

(g)     whether Defendants' April 2017 regulations delayed parole consideration for the Released Subclass;

(h)     whether Defendants could clear the backlog of prisoners eligible for parole consideration under the January 2019 regulations more quickly than their current three-year schedule;

(i)     whether Defendants' three-year schedule for clearing the backlog of parole cases comports with the California Constitution or the Due Process Clause of the Fourteenth Amendment;

(j)     the nature and extent of class-wide injuries and the measures of damages for those injuries.

47.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been harmed by Defendants' common and uniform actions in violation of the California and U.S. Constitutions.  Moreover, the individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit against Defendants.  Finally, the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

48.     The proposed classes are manageable, the proposed class members are readily identifiable, and class litigation will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' actions.

49.     For all of the above reasons, this action is properly maintainable as a class action under Rules 23(a), (b)(2), and (b)(3).

[3467486.2]

# FACTUAL AND LEGAL BACKGROUND

**A.    California Voters Passed Proposition 57 To Make All Nonviolent Offenders Eligible for Early Parole Consideration**

50.    In November 2016, California voters adopted Proposition 57, The Public Safety and Rehabilitation Act of 2016, by ballot initiative.

51.    Among the purposes of Proposition 57 were to "[p]rotect and enhance public safety" and "[s]ave money by reducing wasteful spending on prisons." *Brown v. Superior Court*, 63 Cal. 4th 335, 341 (2016).  In particular, "the voters who approved Proposition 57 sought to provide relief to nonviolent offenders." *In re Edwards*, 26 Cal. App. 5th 1181, 1191 (2018).

52.    To effectuate these purposes, Proposition 57 created Article I, Section 32 of the California Constitution.  In relevant part, it declared that "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."  Cal. Const. art. I, § 32(a)(1).[4]

53.    Proposition 57 defined "the full term for the primary offense" as "the longest term of imprisonment imposed by the court for any offense, *excluding the imposition of an enhancement, consecutive sentence, or alternative sentence*."  *Id.* § 32(a)(1)(A) (emphasis added).  Proposition 57 thereby made all nonviolent offenders serving an enhanced or alternative sentence eligible for early parole consideration as soon as they completed the maximum term to which they could have been sentenced in the absence of any enhancements or alterations.  *See Edwards*, 26 Cal. App. 5th at 1192.  The group of people covered by Proposition 57 included anyone serving an indeterminate life term under California's Three Strikes Law for a nonviolent third strike offense.  *See Edwards*, 26 Cal. App. 5th at 1190.  That is so because, "as long-established authority holds," a sentence

---

[4] The list of felonies classed as "violent" under California law is enumerated at Cal. Penal Code § 667.5(c).

[3467486.2]

increased by California's Three Strikes Law "is an alternative sentence."  *Id.* at 1187; *see also id.* at 1192 ("The language in section 32(a)(1) that excludes any alternative sentence from consideration is most naturally understood as a command to calculate the parole eligibility date as if the Three Strikes law alternative sentencing scheme had not existed at the time of [the defendant's] sentencing.").

54.    Even before Proposition 57 was enacted, state officials recognized that the constitutional provisions created by Section 32 would cover prisoners serving indeterminate life sentences under the Three Strikes law for nonviolent crimes.  While defending the constitutionality of the ballot measure prior to the November 2016 election, the California Attorney General argued to the Supreme Court of California that Section 32 would "cover[] all 'nonviolent' felons, including but not limited to inmates who committed a 'nonviolent' felony punishable under the Three Strikes law."  Prelim. Resp. of Real Party in Interest Att'y Gen. Kamala D. Harris at 2, *Brown*, 63 Cal. 4th 335 (No. S232642); *see also id.* at 24 (noting that the enhancements and alternative sentences excluded from the "full term for his or her primary offense" included "alternative sentences or enhancements imposed under the Three Strikes Law").  The Supreme Court agreed, squarely concluding that the early parole process that would be set forth in Section 32 extended to prisoners sentenced under the Three Strikes Law for nonviolent offenses.  *See Brown*, 63 Cal. 4th at 353.  In fact, the inclusion of nonviolent Three Strikes prisoners was critical to the Court's decision to allow Proposition 57 to appear on the November 2016 ballot.  *Id.*

**B.    Defendants Adopted Regulations Excluding Nonviolent Third Strike Offenders From Early Parole Eligibility**

55.    Section 32 directed the California Department of Corrections and Rehabilitation to develop regulations implementing its early parole mandates.  *See* Cal. Const. art. I, § 32(b).

56.    Section 32 went into effect on January 1, 2017.  For three months, Defendants did not implement the early parole provisions of Section 32(a)(1).

57.    In April 2017, Defendants promulgated emergency regulations implementing

[3467486.2]

Section 32(a)(1).  These regulations defined "Nonviolent Offender" as "an inmate who is not … incarcerated for a term of life with the possibility of parole."  *See* Cal. Code Regs. tit. 15, §§ 2449.1(a)-(a)(1) (2017).  Because the regulations limited the early parole process in Section 32 to only those "Nonviolent Offender[s]," this definition excluded early parole eligibility under Section 32 to anyone serving an indeterminate life sentence, regardless of their crime of conviction, including Plaintiffs and class members identified herein.

58.     As a result, Defendants' April 2017 regulations categorically excluded Plaintiffs from the benefits of Section 32(a)(1), along with all other people convicted of a nonviolent offense and sentenced to an indeterminate life term under the Three Strikes Law.  The regulations excluded all of these people despite the clear and previously acknowledged application of Section 32 to their sentences, including interpretation of Section 32 by the Supreme Court of California.  *See Brown*, 63 Cal. 4th at 353.

59.     When Defendants enacted the April 2017 emergency regulations, CDCR incarcerated approximately 3,100 people who had been sentenced to an indeterminate life term for a nonviolent offense under the Three Strikes Law.

60.     Defendants' final regulations in May 2018 did not stop the exclusion of these prisoners.  The final regulations continued to deny Plaintiffs, and all other people sentenced to an indeterminate life term for a nonviolent third strike offense, eligibility for early parole consideration.  *See* Cal. Code Regs. tit. 15, §§ 2449.1, 3490, 3491 (2018); *see also Edwards*, 26 Cal. App. 5th at 1188.

61.     In September 2018, Defendants' final regulations were struck down by the Second District Court of Appeal for violating Section 32 of the California Constitution. *See Edwards*, 26 Cal. App. 5th at 1192-93.

62.     Defendants chose not to appeal *Edwards*, conceded error in dozens of similar cases, and amended the regulations to comply with *Edwards*.  The new regulations ended the exclusion of nonviolent third strike offenders, allowing them to obtain the eligibility for parole consideration guaranteed two years earlier by Proposition 57.  *See* Cal. Code Regs. tit. 15, §§ 2449.1, 3490, 3491 (2019).

[3467486.2]

**C.    Thousands of Nonviolent Offenders Still Wait for Parole Consideration Because of the Backlog Caused By Defendants' Actions**

63.    When Defendants enacted the January 2019 regulations, the vast majority of the approximately 3,000 people who were then serving indeterminate life sentences for a nonviolent third strike offense immediately obtained eligibility for parole consideration under Proposition 57.[5]

64.    Parole hearings for these prisoners began in June 2019.[6] Defendants' January 2019 regulations gave the Board of Parole Hearings until December 31, 2021 to schedule hearings for these prisoners.  *See* Cal. Code Regs. tit. 15, § 2449.32(b) (2019).

65.    Under the timeline established by these regulations, prisoners made eligible for early parole consideration by Section 32 may wait up to three years after the effective date of the January 2019 regulations to receive their parole hearing.  *See* Cal. Code Regs. tit. 15, § 2449.32(b) (2019).  That is five years after the California Constitution made them eligible for parole consideration.

66.    Plaintiffs are informed and believe that thousands of nonviolent third strike offenders who obtained eligibility for early parole consideration when Proposition 57 went into effect in January 2017 still wait to receive their parole hearings.

**FIRST CLAIM FOR RELIEF**
**PROCEDURAL DUE PROCESS**
**(Violation of the Due Process Clause of the Fourteenth Amendment (Section 1983)**
**Plaintiffs on Behalf of Themselves and All Class Members**
**Against All Defendants in Their Individual Capacities)**

67.    Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged

---

[5] This is so for two reasons: nonviolent third strike convictions declined after 2012 when Proposition 36 mandated that only serious or violent offenses could qualify as a third strike; and the "full term of the primary offense" for most nonviolent offenses is less than seven years.

[6] *See Proposition 57: Indeterminately-Sentenced (Third Striker) Nonviolent Parole Process Frequently Asked Questions*, Cal. Dep't of Corr. & Rehab., https://www.cdcr.ca.gov/blog/proposition-57-indeterminately-sentenced-third-striker-nonviolent-parole-process-frequently-asked-questions/ (last visited Nov. 26, 2019).

[3467486.2]

above as if fully set forth herein.

68.     The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

69.     For nearly half a century, it has been clearly established by the U.S. Supreme Court that parolees have a liberty interest in parole.  *Morrissey v. Brewer*, 408 U.S. 471, 482-83 (1972).  This liberty interest, "although indeterminate, includes many of the core values of unqualified liberty … and must be seen as within the protection of the Fourteenth Amendment."  *Id.* at 482.

70.     Moreover, the Supreme Court has repeatedly held that this liberty interest attaches before a prisoner receives parole when the state's parole laws "create[] a presumption that parole release will be granted" if certain conditions are met.  *See Bd. of Pardons v. Allen*, 482 U.S. 369, 378 (1987) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)).  Inmates incarcerated under a state parole system that creates such a presumption have a "liberty interest in parole release" that is protected by the Due Process Clause.  *Id.* at 376.

71.     Applying these precedents, the Ninth Circuit Court of Appeals has held that California's parole system in particular grants people who are eligible for parole consideration a liberty interest in their potential release that is "entitled to protection under the Due Process Clause."  *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010), *rev'd on other grounds sub nom. Swarthout v. Cooke*, 562 U.S. 216 (2011) (per curiam); *see also Swarthout*, 562 U.S. at 219-20 (declining to review the Ninth Circuit's holding that "California law creates a liberty interest in parole," but noting that "it is a reasonable application of our cases").  That holding has been reaffirmed by the Ninth Circuit since the Supreme Court's decision in *Swarthout*.  *See Roberts v. Hartley*, 640 F.3d 1042, 1045 (9th Cir. 2011) ("*Cooke* did not disturb our conclusion that California law creates a liberty interest in parole.").

72.     At all times relevant to this lawsuit, it was therefore clearly established

[3467486.2]

Fourteenth Amendment law in California that all people who are eligible for parole in the state have a protected liberty interest in the possibility of conditional freedom offered by that eligibility.

73.      Defendants violated this clearly established law by failing to implement Section 32 from January to April 2017 and then enacting regulations stripping all nonviolent third strike offenders of their parole eligibility.  As the U.S. Supreme Court has held, when the "nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment," the applicability of the Amendment's procedural protections is no longer disputable: the only remaining question is "what process is due." *Morrissey*, 408 U.S. at 481.  The answer given by Defendants—no process at all—cannot be valid.  *See Zinermon v. Burch*, 494 U.S. 113, 135 (1990) (holding state officials liable when "those officials fail to provide constitutionally required procedural safeguards to a person whom they deprive of liberty").

74.      Categorically depriving Plaintiffs of their parole eligibility without due process effected a substantive injury by denying them the possibility of early release.  Plaintiffs endured two years of despair and uncertainty as their incarceration continued without access to the parole consideration to which they were constitutionally entitled.  Plaintiffs and all members of the Eligibility Class are owed appropriate and more than nominal compensation for this harm.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *see also Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).

75.      This deprivation continued until January 1, 2019, the effective date of the January 2019 regulations.

**SECOND CLAIM FOR RELIEF**
**BANE ACT**
**(Violations of Cal. Const. art. I, § 32 and Cal. Civ. Code § 52.1**
**Plaintiffs on Behalf of Themselves and All Class Members**
**Against All Defendants in Their Individual Capacities)**

76.      Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged above as if fully set forth herein.

77.      The Tom Bane Civil Rights Act ("Bane Act") provides that "[a]ny individual

[3467486.2]

whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with," may bring a civil action for damages and equitable relief.  Cal. Civ. Code § 52.1(c) (West 2019).  An individual's constitutional rights are "interfered with" under the Bane Act when the official committing the violation "had a specific intent to violate the [individual's] right."  *See Cornell v. City of San Francisco*, 17 Cal. App. 5th 766, 801 (2017); *see also Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (adopting *Cornell*'s analysis of the Bane Act).

78.    This intent standard requires that the right in question be "clearly delineated and plainly applicable," and that "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that … right."  *Cornell*, 17 Cal. App. 5th at 803 (ellipsis in original) (quoting *People v. Lashley*, 1 Cal. App. 4th 938, 948-49 (1991)).

79.    Here, both elements are met.  Article I, Section 32 of the California Constitution granted Plaintiffs a right to parole eligibility.  *See In re Edwards*, 26 Cal. App. 5th at 1190 ("There is no question that the voters who approved Proposition 57 intended Edwards and others serving Three Strikes indeterminate sentences to be eligible for early parole consideration ….").  And Defendants enacted the April 2017 regulations with the plain purpose of depriving Plaintiffs and all other nonviolent third strike offenders of that constitutional right.  *See id.* at 1188.

80.    Plaintiffs and all members of the Eligibility Class are entitled to appropriate compensatory damages for Defendants' violations of the Bane Act.

81.    Plaintiffs F.J. and R.E. have presented their claims as required by the California Tort Claims Act.  The claims of Plaintiffs F.J. and R.E. encompassed the claims of all other class members because they described the harm caused to all class members and the legal claims created by that harm, and because "the basic nature of [their] claims is identical to those of the class."  *See Roy v. City of Los Angeles*, 114 F. Supp. 3d 1030, 1036-38 (C.D. Cal. 2015); *see also City of San Jose v. Superior Court*, 12 Cal. 3d 447, 457

[3467486.2]

1   (1974) ("We … reject the suggested necessity for filing an individual claim for each

2   member of the purported class.").[7]

3                          **THIRD CLAIM FOR RELIEF**
                         **SUBSTANTIVE DUE PROCESS**
4   **(Violation of the Due Process Clause of the Fourteenth Amendment (Section 1983)**
        **Plaintiff F.J. on His Own Behalf and the Released Subclass**
5          **Against All Defendants in Their Individual Capacities)**

6       82.     Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged

7   above as if fully set forth herein.

8       83.     Plaintiff F.J. and all members of the Released Subclass had their release

9   delayed by Defendants' unconstitutional actions.  The Released Subclass consists of

10  people whose time in prison was demonstrably extended by Defendants' failure to

11  appropriately implement Proposition 57.  These individuals have now been released, and

12  this release would have been secured earlier if they had not been denied access to parole

13  consideration by Defendants' actions.

14      84.     "Liberty from bodily restraint always has been recognized as the core of the

15  liberty protected by the Due Process Clause from arbitrary governmental action."

16  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 18 (1979) (Powell, J.,

17  concurring).  "Indeed, the paradigmatic liberty interest under the due process clause is

18  freedom from incarceration."  *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th

19  Cir. 1992).

20      85.     Defendants violated clearly established Fourteenth Amendment law by

21  unlawfully prolonging the incarceration of members of the Released Subclass.  Federal due

22  process rights to timely parole consideration are enforceable under 42 U.S.C. § 1983.

23  *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005).

24  _____

25  [7] The claims submitted by Plaintiffs F.J. and R.E. indicated that they "present[ed] this
    claim on their own behalf as well on as on behalf of a class of all persons similarly
26  situated," which was defined to include "all California state prisoners who were excluded
    at any time from the parole consideration rights granted by Article I, Section 32(a) of the
27  California Constitution due to CDCR's unlawful regulations."  *See* Ex. A, Addendum to
    State of Cal. Gov't Claim Form, at 2.
28

[3467486.2]

86.     Defendants are liable to Plaintiff F.J. and every member of the Released Subclass for each day that their release from prison was delayed by Defendants' actions.

**FOURTH CLAIM FOR RELIEF**
**FALSE IMPRISONMENT**
**(Plaintiff F.J. on His Own Behalf and the Released Subclass**
**Against All Defendants in Their Individual Capacities)**

87.     Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged above as if fully set forth herein.

88.     Under California law, "[f]alse imprisonment is the unlawful violation of the personal liberty of another." *See* Cal. Penal Code § 236 (West 2019).  The tort of false imprisonment is identically defined and consists of "the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time." *Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350, 372-73 (2004) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1123 (1988)).[8]

89.     A false imprisonment claim lies when detention is prolonged beyond its legal justification, as long as the jailer has reason to believe that the validity of the incarceration is questionable.  *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1380-81 (9th Cir. 1998).  The Ninth Circuit has allowed a California false imprisonment claim to proceed in an analogous circumstance: when CDCR failed to move promptly to release a prisoner after the law under which his conviction was obtained was held to be unconstitutional.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067, 1071-72 (9th Cir. 2009).

90.     Members of the "Released Subclass" were confined without lawful privilege from the date they should have been released under Section 32 of the California Constitution until the date they were actually released.  Following the enactment of Section 32, Defendants had a constitutional obligation to consider Plaintiffs for parole, and therefore had reason to question the lawfulness of continuing to incarcerate Plaintiffs if

---

[8] California statutory immunities do not apply to false imprisonment claims. *See* Cal. Gov. Code § 820.4 (West 2019).

[3467486.2]

1  they were not considered for and denied parole.

2      91.    Defendants are liable to every member of the Released Subclass for each day

3  that their release from prison was delayed by Defendants' actions.

**FIFTH CLAIM FOR RELIEF**
4  **PROCEDURAL DUE PROCESS (INJUNCTIVE RELIEF)**
5  **(Violation of the Due Process Clause of the Fourteenth Amendment (Section 1983)**
   **Plaintiffs R.E. and D.B. on Their Own Behalf and the Injunctive Subclass**
6  **Against Defendants DIAZ and DOES 1-10 in Their Official Capacities)**

7      92.    Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged

8  above as if fully set forth herein.

9      93.    Defendants DIAZ and DOES 1-10 have established a deadline of

10  December 31, 2021 for the Board of Parole Hearings (BPH) to schedule hearings for the

11  nonviolent third strike offenders whose eligibility was delayed by the April 2017

12  regulations.  *See* Cal. Code Regs. tit. 15, § 2449.32(b) (2019).

13      94.    These persons should have become eligible for parole when Proposition 57

14  went into effect on January 1, 2017.  Instead, because of Defendants' actions, the queue for

15  their parole hearings did not begin until January 1, 2019.  The resulting backlog of

16  hearings was created by Defendants' failure to implement Proposition 57 from January-

17  April 2017, and by the unconstitutional April 2017 regulations.

18      95.    The schedule established by Defendants in the January 2019 regulations—

19  which grant BPH a further three years to schedule hearings for nonviolent third strike

20  offenders—will continue to delay parole consideration for these persons.  This will

21  ultimately allow Defendants to incarcerate members of the Injunctive Subclass for up to

22  five years after they should have become eligible for parole.

23      96.    Plaintiffs R.E. and D.B., on behalf of all members of the Injunctive Subclass,

24  therefore seek an injunction requiring Defendants DIAZ and DOES 1-10 to expedite the

25  current three-year plan for scheduling their parole hearings.

26

27

28

CLASS ACTION COMPLAINT

[3467486.2]

**SIXTH CLAIM FOR RELIEF**
**CALIFORNIA CONSTITUTION (INJUNCTIVE RELIEF)**
**(Violation of Cal. Const. art. I, §§ 7 & 32 (Due Process & Proposition 57)**
**Plaintiffs R.E. and D.B. on Their Own Behalf and the Injunctive Subclass**
**Against Defendants DIAZ and DOES 1-10 in Their Official Capacities)**

97.    Plaintiffs hereby incorporate by reference all preceding paragraphs as alleged above as if fully set forth herein.

98.    Article I, Section 7(a) of the California Constitution provides, *inter alia*, that "[a] person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. I, § 7(a).  This provision, "like many other constitutional provisions," supports a cause of action for injunctive relief directly under the California Constitution. *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 307 (2002); *see also Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 257 (2008).

99.    Defendants violated both Article I, Section 7 and Article I, Section 32 of the California Constitution by delaying for two years the eligibility of all nonviolent third strike offenders for parole consideration.  *See In re Edwards*, 26 Cal. App. 5th 1181, 1190-91 (2018) (holding that Defendants' actions violated Section 32).

100.    The schedule established by Defendants in the January 2019 regulations—which grant BPH a further three years to schedule hearings for nonviolent third strike offenders—will continue to delay parole consideration for these persons.  *See* Cal. Code Regs. tit. 15, § 2449.32(b) (2019).  This will ultimately allow Defendants to incarcerate members of the Injunctive Subclass for up to five years after they should have become eligible for parole, continuing Defendants' ongoing violations of Article I, Sections 7 and 32 of the California Constitution.

101.    Plaintiffs R.E. and D.B., on behalf of all members of the Injunctive Subclass, therefore seek an injunction requiring Defendants DIAZ and DOES 1-10 to expedite the current three-year plan for scheduling their parole hearings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek the following relief:

[3467486.2]

1.      Compensation for the time that Plaintiffs and all Class Members spent incarcerated without eligibility for parole consideration because of Defendants' actions;

2.      Compensation for the time that Plaintiff F.J. and members of the Released Subclass spent incarcerated because of Defendants' actions when they would have otherwise been released on parole;

3.      An order requiring Defendants to expedite their current three-year schedule for holding parole hearings for all nonviolent third strike offenders who became eligible for parole consideration in January 2019;

4.      An order forbidding Defendants and their employees from retaliating against Class Members in future parole hearings;

5.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful;

6.      Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

7.      Designation of each of the named Plaintiffs as Class Representatives for the Class Members, and designation of Plaintiffs' counsel of record as Class Counsel;

8.      Pre-judgment and post-judgment interest as provided by law;

9.      Attorneys' fees and costs of the action;

10.     Such other and further relief as this Court shall deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues so triable.


DATED:  November 27, 2019           Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Ernest Galvan*
        Ernest Galvan

Attorneys for Plaintiffs

[3467486.2]